Case number 24-2028, Linda DeVooght v. City of Warren, MI et al. Argument not to exceed 15 minutes per side. Ms. Battalamenti, you may proceed. Good morning. Good morning. Rachel Battalamenti for the Defendant's Appellants, and I'm reserving 5 minutes. Very well. So, I will begin by just acknowledging Judge Grant tried to do what he could when this case got in front of him. You know, I think he reverted the case back to a motion practice. He pushed the trial date out. It was a very procedurally messy case when he got it. But there were several defects in what he did on the eve of trial in pushing the case forward. Namely, he agreed that there was no count one Monell claim against the city. He agreed such a claim had not been pledged. But then he said, well, we are going to revive, though, from the complaint, this individual liability claim against Defendant Dwyer. In doing so, it is very important for this Court to recognize that even in the transcript, and I'm referring to the record transcript 116, that there was an acknowledgment both by the Court and by Mr. Carlson, who is here to argue today, that that claim had been abandoned. I mean, I think he actually says he's been kicking himself since that hearing on the first motion for summary. He says, I've been kicking myself, and my co-counsel has been too, because we did not make these arguments at that time. There was no dispute that the claim had been abandoned. Make what arguments at the time? About the individual liability claim. So, in other words, the individual liability claim against Defendant Dwyer had been pled. It was in the complaint. It was in the second amended complaint. However, the defendants filed a motion for summary judgment at the close of discovery. We said the claim that's being pursued in discovery at the depositions, the claim is a Monell-based claim against Defendant Dwyer. There was no response that said, no, we are not pleading that claim. No, that is not our theory. We believe that Defendant Dwyer is individually liable. Instead, they responded on the Pembauer-Monell basis that Dwyer is liable under Monell. And that, therefore, the city is liable under Monell. That was the argument that was made. That we go all the way through to trial, and we get to this point where the judge says, wait a minute. There's no Monell claim that's even pled in the original complaint or in the second amended complaint. Why are we talking about Monell? And this comes up because we are preparing jury instructions and motions in limine. And the parties have this huge dispute about whether or not we're providing a Monell instruction to the jury. Because we say there's no Monell claim pled. And even if there had been, Judge Stee already dismissed it on the first round of summary judgment motions. The response is, well, we think that a motion for reconsideration would be appropriate because we do think that there is liability for Defendant Dwyer, and we want to bring them back into the case. Why can't they do that? I'm not following why they can't do that. So the law is that a claim has been abandoned at the point in time when you respond to summary judgment. And this is the Brooks v. Spiegel case, and also the Hicks v. Concord cases that we cite. Wasn't your summary judgment limited to Monell? Our theory. They have pled an individual claim against Dwyer. They say that he recommended termination, that he was part of the termination. In fact, I think there's even an assertion that he himself terminated the plaintiff. I mean, so there's individual liability pled. And your motion for summary judgment was limited to Monell. And you're right, it doesn't apply to him. But I don't see how you can say they've abandoned the other claims by the response to your Monell limited motion. Because Judge C's ruling at the record, his opinion order at 35 in the record, his ruling is defendant Dwyer is dismissed from count one. Well, okay. And then he acknowledged he was an error, so he reversed himself. That was not Judge C, that's Judge Grant. Whatever, it's the district court. Yes. I mean, the district court corrected itself. And there's nothing wrong with that. In fact, we appreciate when they do that. So the problem, though, respectfully, is that we get to the eve of trial. We believe that defendant Dwyer is dismissed. You believed it, but your motion was limited to Monell, which was only one of the claims. Except then the reconsideration is filed. And the reconsideration still... If you just file a Monell motion for summary judgment, how can they abandon the individual liability claim in response to that motion? Because Judge C didn't dismiss only the Monell-based claim. Judge C dismissed defendant Dwyer from count one of the claims. Sure, but that was... I'm sorry. Go ahead. No, you go ahead. I was just going to say, that's the judge doing that. That's not the plaintiff abandoning a claim. I understand the judge does that, but how does that mean that the plaintiff has abandoned the claim? Right. So the law is that if a party is dismissed in error, it is incumbent upon the plaintiff. The plaintiff has to come in with a reconsideration motion or file something to say... A judge can always... A judge can sue a spot that you say, I made a mistake. I agree with that. Okay. So, and there was no judgment in this case. In the cases you point to, there's often judgment. They said, look, we're preserving... They even at some point dropped a note and said, we're going to appeal that ruling. So that was on the eve of trial. What you're talking about is the reconsideration motion. Remember, the reconsideration motion is filed a year and a half after the original ruling. We are on the eve of trial. Trial gets moved back a month so that this motion for... Untimely motion for reconsideration can be filed by the plaintiff to argue... But a district court can waive a deadline. And I agree with that too. The problem is, even in that reconsideration motion, they still never raise... It is not the argument of the plaintiff, even at that point in time in the case, that there is an individual liability claim. I mean, it's so clear that they're arguing, Penbauer, that in the record at 116, Judge Grant says, it is very clear to me that you are still arguing a Monel Penbauer standard for defendant Dwyer's liability. You still have not brought forth an argument for why he is individually liable. Other than pleading in your complaint, you are still not understanding the standard. Other than pleading in your complaint? I mean, their claim is based on the complaint, is it not? It is, except when there's... I mean, that's the document we look at. Correct. Except when there's no discovery over... I meant that they pled individual liability, and it's right there. A hundred percent, I agree. Okay, so... That's uncontested. All right. I guess I understand your argument. In response to your limited motion for summary judgment based upon Monel, they did not assert that they were also claiming individual liability.  Right. And then we get to an untimely motion for reconsideration on the eve of trial. They still don't make an argument for individual liability. And that's important. And the reason why I say that's so important is because we get up to the hearing before Judge... Look, I agree this is not the best written, but they do say plaintiff requests reconsideration of defendant Dwyer's individual liability. That's true. And the judge pointed out the fact that it says that at one spot in the brief, and then the entire argument is a Monel Pembauer-based liability argument. And he actually notes that in the record at 116, is that still, even in that reconsideration, although it says it at one spot in the introduction, that actually we're still arguing a Pembauer analysis. And that's very important. And the reason why... I'm sorry. So what's the point of this? Because the district court got it right. So the point of this is that because we go into that reconsideration hearing still arguing about Pembauer and Monel, a claim that was never pledged, that at that point the judge does not do a qualified immunity analysis. Well, then why are you in front of us? Isn't there a better answer than you should go back and get a qualified immunity analysis before you even appeal? I tend to agree with you, Judge, that that is one outcome of this appeal, is that you can direct that Judge Grant needs to undertake a full qualified immunity analysis. Because if you are going to reinstate that individual liability claim, either this court or the trial court, somebody has to conduct that qualified immunity analysis in depth. And what he says is, we're on the eve of trial, I'm finding that there's no Monel claim, but I'm reinstating the individual liability claim, and there's a lot of facts going back and forth and a lot of questions, and I'm not going to go through all the elements of the qualified immunity analysis, that instead we're going to talk about pretext and things like that that don't even apply to qualified immunity analysis. And I'm going to find, based on that, that we're just going to move towards trial and all these issues can go before the jury. But that's not what you do with qualified immunity. But you can move qualified immunity, you can move to dismiss, you can do it at summary judgment, you can do it at directive verdict. That's correct. So, in theory, you get three bites at the apple at QI, right? And so you could never file a motion the case could go to trial and you can move at directive verdict for QI. The difference is we did file a motion. They argued there's no QI in here. I'm looking at their motion for reconsideration, pages 9 and 10. They argue that there's no qualified immunity. So corresponding to that, when they were granted leave to file an untimely reconsideration, we were granted leave to file a second motion for summary judgment. In that motion for summary judgment, we argue, hey, if we're reinstating an individual liability claim or we're looking at that claim as pled, because that's now what the plaintiff is arguing about, we need a qualified immunity analysis and we do that analysis. And in response to that, and actually at the hearing, Judge Grant says, wait a minute, is that in your motion? Because I didn't see it in response to their reconsideration because they didn't argue individual liability, so we didn't respond to that argument. We made our own motion about, hey, if you're going to reinstate individual liability, you have to do this analysis. And so the judge actually says on the record, I didn't even see that argument in your briefing, and so I'm not prepared to rule on it. And so it is not ruled on. And so there are two possible outcomes. One is that this court consider the qualified immunity analysis, in which I'm going to tell you when I come up in rebuttal about all the undisputed facts that this is not a factual challenged case, but separately that the trial court just didn't do it and you can't go to trial on a qualified immunity. And it's one of those issues that there's an immediate appeal of right. It's an important enough issue with respect to municipal liability that there's an immediate appeal of right so that these errors can be corrected. So either this court can look at qualified immunity or it has to direct that the trial court fully undertake that analysis. My time has expired. Okay. Any further questions? All right. Let's hear from the plaintiff, Appellee. Good morning. Good morning, Your Honors. And may it please the court, Kevin Carlson, appearing on behalf of Plaintiff Linda Devote. This court's jurisdiction over this appeal is limited to deciding whether the district court correctly or incorrectly answered pure questions of law in inheritance. Will you skip to the point? Did the district court rule on the QI? Yes, Your Honor. Where does the district court rule on the QI? Record number 116.  It was clearly at page ID number 4251 where the district court, this is Judge Grand, serving. Yeah, no, I'm looking at the transcript. 4251, you said? That's where it's most expressed, but that's sort of the culmination of Judge Grand's analysis on the record of sort of the factual arguments that have been made back then. I mean, it's pretty easy to rule on QI. Does he say the magic words? Like, does he say qualified immunity? Yeah. Does he say it's denied? He says the motion for summary judgment is denied, and he agrees with the reasoning of Judge Stee on the factual issues that have been raised in support of summary judgment, including whether the plaintiffs had suffered adverse employment actions and whether there was factual questions on the issue of causation. So he says at page 4251, for example, and in terms of the first prong in the qualified immunity, the clearly established prong, notwithstanding that there could be these non-pretextual bases, she has a First Amendment right to engage in protected activity, and that's clearly established. And if he, referring to Defendant Dwyer, took an adverse action because of that, there's at least, I think, a question of fact as to, you know, whether qualified immunity would be appropriate there. And so, you know, going back into the record, and this is at pages 42 to 44 of our brief in this court, the original error was that the defendants attacked the individual liability claim against Dwyer, which is clearly pleaded in the complaint, as if it were only a Monel Pembauer official capacity. It seems to me, I mean, the district court's getting blamed for a lot, but it seems to me they say you did that, you say they did that. The reality is the complaint's pretty clear. After the complaint is a mess. I mean, this record is a train wreck. But the reality is that there is an individual liability claim. I think the district court ruled on it, from what I can see. And so then it comes down to they, in their reply brief, when you say no jurisdiction, they point to the Sixth Circuit cases, citing Scott v. Harrison, and say, look, you can consider all undisputed facts and you can consider facts blatantly contradicted by the record. We have jurisdiction to do that. You agree with that, I presume. I agree with that. We cite those same facts. Right, yeah. So that is the authority. We can consider any evidence that's in the record that's undisputed and evidence that you present that's blatantly contradicted by the record. Right. To me, this comes down to one simple question, which is, what do you claim are the adverse consequences? Now I'm moving to your argument. What do you claim are the adverse consequences as a result of the lawsuit that she suffered? So the first adverse consequence is the initiation of the investigation itself? Right, but we have case law saying if you have a valid basis to initiate an investigation, if there's a complaint made, you can do it. And that can't be an adverse consequence. Just let me give you a hypo. We have a rogue police officer. The rogue police officer files a lawsuit against the department for the police. It can't be that they can't investigate an investigation for police brutality against a police officer and potentially discipline that police officer for that brutality, and that can be the basis for a First Amendment retaliation lawsuit. Do you agree with that or disagree? I agree with that, Your Honor, but if the complaint is unfounded or wouldn't otherwise be at that level of seriousness to trigger an IA investigation. But at that level of seriousness, that's in the eye of the beholder is what's serious. Here you have complaints about harassment about your client, right, and creating an environment that was not pleasant. I disagree with the seriousness of the harassment complaints against my client. Sure, sure. No, I'm saying you have that. I'm not saying whether they're serious. I'm saying you have that. They conduct an investigation. She agrees to the demotion. What I'm trying to understand is where in there should we pull out and say, okay, they begin an investigation. There's adverse consequences of that investigation, and you can tie those on to retaliation. Well, at a minimum, it would be the ultimate action of termination is clearly an adverse action preceded by disciplinary charges, a disciplinary suspension, preceded by an investigation that we say shouldn't have happened and was really a form of harassment. This court following the Burlington case recognizes that even informal acts of workplace harassment without a sort of official employment action, like a demotion, suspension, loss of pay, or termination, can be enough to dissuade a reasonable employee from engaging in the protected activity, which under the Burlington standard is an adverse employment action. I noted in preparation that, you know, Judge Mathis, Judge Griffin, you were on the panel in the Josephson case, and in the Josephson case the court held, quote, the adverse nature of a particular action will depend on context. The adverse action inquiry is a question of fact. As a result, retaliation claims based on all but genuinely inconsequential official actions should go to a jury. And maybe is that published? Yes.  Well, look, I think we have other published cases like Hoover that also support you, but the reality is, is, right, there has to be some exception that we have not carved out. I'll admit, we haven't carved it out. It's our fault, not yours. For rogue police officers, police officers that are sexually assaulting people, whatever, I can come up with a hundred hypos where there have to be exceptions, and then how do we create, how do we carve that out? And then does this fit within the carve out? I would say, first of all, there's no need to do a carve out in this particular case. That's a great answer. We don't have something rising to the level of, you know, blatant police brutality. How do we decide it? Like, help me figure out where the line is and then whether your case, I love your answer in that you're saying, look, whatever you're trying to figure out, Judge, we're on the good side of it. Well, I think Burlington, when Burlington says, you know, constellation of surrounding circumstances, each workplace is unique, each workplace has its own, it makes it hard to do carve outs. Right. But you understand what I'm saying is there has to be a vehicle by which police departments and law enforcement agencies can investigate officers who are causing problems without facing a First Amendment retaliation suit because they made some statement, they got on social media and said something obnoxious, whatever, and they say that's why you're doing it. And your answer is that goes to a jury if you don't draw a line. It goes to the jury in this particular case because the testimony, we did a lot of discovery around, you know, what is the formal practice or is there any official guidance to determine when an IA investigation does or does not happen in this department. And the testimony was no, we do it, we do it by feel. And when a concern comes up, let's be very factually specific, Ryan Fessenden is a dispatcher who sits next to my client, Linda Devote, somewhere in the dispatch center of the Warren Police Department. This is, in our words, an intemperate place where the toxicity of the climate predates the lawsuit, predates women complaining about having to do searches, which was the cause of the underlying lawsuit. There's a lot of tension in this workplace. It's a difficult job, right? And the testimony from all of the witnesses from the city of Warren is usually when the dispatchers and police officers come up to us with these kinds of concerns, like I saw Linda Devote approach Dispatcher Dranberg in the lunchroom and ask her about the lawsuit, I think that was harassment, right? They always have options at that point. They can just stay within chain of command. They can go to Chelsea Dranberg. They can go to Linda Devote and say, hey, what's going on between you two? Is there tension about the lawsuit? And if they can work it out, that's not cause for an IA investigation. That's not the kind of thing that would warrant a full-time dedicated investigation of an IA sergeant doing 23 interviews of dispatchers only to see whether the women who filed the lawsuit engaged in some sort of harassment. Now, the very next day in this case, Linda Devote, my client, reports one of her subordinates, Mariah Al-Assadi, for being chronically tardy, using inappropriate language in the workplace, things like that. Mariah Al-Assadi says, well, I don't like that Linda Devote filed this lawsuit. So they turn that into an IA investigation. That's not exactly what she said, but close enough. She complained that Devote was pressuring her. No, but then when they investigated, all of the witnesses agreed that they never felt pressured by Devote to join the lawsuit or not. And when IA saw the text messages, Linda would say, hey, the lawsuit's on file. Let me know if you guys want to join or if you're in or out. And when they said they were out, she took them off the text thread. The investigation vindicated her in part. But you're saying that the investigation itself was retaliation. Right. It was a form of retaliation. Even if it vindicates her. Because under the testimony, well, listen, if I'm Linda Devote, I guess if I'm any employee, and the question is would I be reasonably dissuaded from engaging in protected activity if I knew that doing so was going to cause the department to get turned upside down into this disciplinary IA investigation into me, I think the answer to that question, at least from an objective question of fact standpoint, is yes, I would. It's objectively reasonable to not want to be investigated because you filed a lawsuit. Sure, but we do have case law, luckily, saying they can investigate legitimate complaints. A First Amendment claim doesn't preclude the office from engaging in investigations. Where our case law gets off the rails is that they can't discipline at all without it going to a jury. Do we have to decide whether an investigation itself is adverse action when here she's terminated and then she's later demoted? Yeah. The termination itself is adverse action. And the ultimate demotion through the collective bargaining proceeding is certainly adverse action, is it not? Yeah, I agree, Your Honor. This court does not have to decide. I think it's a tricky question whether an investigation itself is adverse action. But I don't think I've got to go there, do I? No, you do not. Okay. No, my position is you don't have to address whether the investigation itself is an independent adverse action. The disciplinary demotion termination definitely is. But your position is in the First Amendment retaliation context, an investigation could be an adverse action. I also take that position. I don't think it's necessary to the court's holding in this case. It would be necessary if my client had never been terminated or demoted. That would be a different case. I would be limited to arguing that the investigation was materially adverse for First Amendment purposes. Your Honor, as to Defendant Dwyer's individual involvement in the decision-making, which is my opponent's other argument, although not addressed prior to rebuttal, the question of whether and to what extent Dwyer was involved directly in the investigation and the decision to terminate is a quintessential fact question. Dwyer himself, the initial position taken by the defense at record number 27, page ID 137, was that before making the decision to terminate or in deciding to terminate Linda DeVote, Dwyer engaged in careful consideration of the internal affairs investigation and discipline available to him. And also at record number 105, page ID 183, which is pages 57 and 58 of Defendant Dwyer's deposition, he testified, quote, the question was, you were the only decision-maker responsible for deciding to terminate Linda DeVote's employment. Correct? Answer? That's correct. At page 58. Yeah, the deposition is clear. Yeah, the deposition is clear. So Defendant Dwyer was individually directly involved in the decision to terminate. He signed the termination letter. He owned the decision in deposition. But all of that's irrelevant, right? Because he said in the deposition he gets to make the decision, so it's a factual question. That's correct. That's correct. Yeah. So we have clearly established law, context-specific questions of fact precluding summary judgment in a fact-intensive case. We have a clear adverse employment action at a minimum in the form of termination, and we have evidence that Dwyer was directly involved. I believe that addresses the arguments we need to raise today. Okay. Any further questions? Thank you. Thank you. I think we've got three minutes rebuttal, or is it five minutes rebuttal? Five, yes. Five minutes. So first and foremost, the complaint. We're going back to the complaint, right? We're letting them raise the individual liability claim from the complaint. The complaint does not plead it is adverse action by Ms. DeVote to terminate. The complaint pleads that the initiation of the investigation was retaliatory. It does not plead anything for the Paragraph 1, that the city and Dwyer authorized and implemented exceptionally severe discipline, including unpaid suspensions, demotion, and termination. Right. So that they authorized it and initiated it. That it is the initiation of the internal affairs investigation. And then 63 says impose severe disciplinary consequences. 64 says Dwyer had terminated her employment as disciplined. Right. And he was not the final decision maker. So that's why they don't make the argument under Monell, because they can't, that he was the final decision maker. They're not. They keep saying we're making an individual liability claim. Right. For him terminating her. For him initiating the proceeding. That is the argument that was made in the lawyer. Paragraph 64 says he terminated her. The deposition says I decide whether she's terminated. And he does. He is not the final decision maker. It was appealed, and the personnel director decides it. But you are correct. So they can bring an individual liability claim against Dwyer, whether or not he's the final decision maker. So I tend to agree, but that's not the claim that they alleged. That's not the claim that they argued about in the lower court. That's not the claim that they argued about when we had the hearing at 116. The argument has always been about the initiation of the proceeding. In addition to that, I think it's very, very important that you were pointed to, you were told the qualified immunity analysis was done. And you were pointed to page 4251 of the record, because the word qualified immunity, because that was what our motion was predicated on, that defendant's motion for summary judgment on qualified immunity is being denied. That those are the trigger words that were pointed to you. However, it is very important because your jurisdiction is clearly legal error. Right. So very important here that what you just heard from Brother Counsel was because he found that there were questions of fact and causation and pretext. Neither one of those have anything to do with the qualified immunity analysis. I heard something also about clearly established, which is qualified immunity. We would contend that the clearly established analysis was not done, that there's nothing in the transcript about the clearly established analysis. And I didn't hear it from Brother Counsel. Maybe I missed it, but that is what was not done. Yeah, that's 4251. 4251 is where it says, in terms of the first prong in the qualified immunity, the clearly established prong. And then he goes on, and he says that he finds that there are questions of fact, and his decision is because there are issues about causation, and there are issues about pretext. Neither one of those are elements that should be considered with respect to the clearly established prong of a qualified immunity analysis. So when we're looking at this court's... Sure, but they are considered in prong one of the qualified immunity analysis. I mean, they're part of it. Not pretext. Pretext should never be part of a retrial. But causation is. Causation is. Causation could be an argument. But causation is, as it was described by... Issue of fact. And then Hoover, okay, whatever the district court did, we're reviewing a denial of QI. You appealed. Yes. Correct? Yes. We can look at our own case law. Hoover pretty clearly contemplates that if you're disciplined, it's clearly established you can't discipline someone for filing a lawsuit.  There's a causation question. Our case in Decrain says causation is a question of fact. Correct. It seems pretty simple. QI denied. So my next argument is that the basis on which the trial court does that, the basis on the facts that are actually here, the facts that were argued in defendant's motion that were not considered and that you will not see considered in this transcript, are the facts that there is a general order in place that required the initiation of that investigation. That Linda DeVoot testified... Look, I agree with you on the initiation of the investigation. We're talking about, as your friend on the other side pointed out, the discipline that resulted. So with respect to that, both Ms. DeVoot and the union president of the Command Officers Association acknowledge and agree, and her lawyer in the union proceedings, acknowledge and agree that termination or demotion were appropriate disciplines given the outcome of the investigation. They also testified. Ms. DeVoot, this is Ms. DeVoot's testimony. She testifies. There is nothing irregular. There are no irregularities in the investigation itself. And her attorney, her command union officer, and herself all acknowledge that the argument about hostility that was being made by her subordinate employees, she can understand where it came from, and that she did in fact violate state law. She violated the general orders with respect to what she did with Clemmis and the records, hundreds of pages of records from the police department that she distributed to third parties. So that is the undisputed record. That is the qualified immunity analysis. There is no dispute that there is no irregularity, that there's a general order that required the initiation, and that the outcome of the discipline was fair and appropriate, according to Ms. DeVoot. So we are here on a qualified immunity analysis because the facts that are there are undisputed, and the trial court did not consider that undisputed record. All right. Any further questions? All right. Thank you, counsel. Case will be submitted.